# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEVELAND EVANS,<br><br>        Plaintiff,<br><br>   v.<br><br>CISNEROS, *et al.*,<br><br>        Defendants. | Case No. 1:22-cv-01238-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 13)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Cleveland Evans ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, and Plaintiff was granted leave to amend. Plaintiff's first amended complaint, filed on March 6, 2023, is currently before the Court for screening. (ECF No. 13.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

1

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.,* 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.   Plaintiff's Allegations

Plaintiff is currently housed at High Desert State Prison in Susanville, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at California Substance Abuse and Treatment Facility ("SATF"). Plaintiff names as defendants: (1) John Doe, correctional food manager; (2) A. Rodriguez, supervisor correctional cook; (3) Moua, correctional officer; (4) L. Ruiz, correctional officer; (5) F. Barraza, correctional officer; (6) Gomez, correctional officer; and (7) Jane Doe, correctional officer. Defendants are being sued in their individual and official capacities. Plaintiff alleges that each of the Defendants "had knowledge of Plaintiff's dietary requirements."

Plaintiff is a practicing member (Muslim) of the Islamic faith. An essential element of the Islamic faith relates to the "diet of practicing Muslims." As dictated in the "Holy Quran," primary religious source, dietary requirements are identified in the context of lawful "Halal" food versus unlawful foods for consumption. At issue here is Halal food not being provided. Plaintiff contends he has a First Amendment right to be afforded a religious diet.

Plaintiff holds a sincere belief in the Islamic Faith and adheres to the dietary requirements cited in the Holy Quran (Chapter(s) 2 verse 168, 172, 173; Chapter 5, verse 3, 4, 5.) Plaintiff has received prior approval per procedural regulation to receive Halal food. The Defendants have failed to afford Plaintiff such rights. The failure of the Defendants amount to Plaintiff being denied his First Amendment right in religious freedom.

"Plaintiff contends that over a (9) nine month period while housed in administrative segregation unit (Ad-Seg) Plaintiff was forced to contest with prison officials over being provided (Halal Food) religious diet. After several informal and formal 'requests for interview(s) and inmate appeals' addressed to the prison food manager, supervisor(s), including some of the Defendants cited herein the Plaintiff has been left with no other remedy to address the failure of providing Plaintiff with a religious diet. The failure of the Defendants constitute a violation of Plaintiff's First Amendment right (Free Exercise Clause)." (ECF No. 13 at 3.) Plaintiff alleges that on average three days out of each week throughout the nine months, a religious diet was not provided. At the time of the events in the first amended complaint, Plaintiff was housed in Administrative Segregation, Section H, cell #199.

Plaintiff alleges that as early as October of 2021, prison officials including Defendant John Doe (food manager) were informed of Plaintiff not being allowed Halal food in several Inmate Requests for Interviews. In addition, Plaintiff had in-person confrontations with Defendants Moua, L. Ruiz, F. Barraza, Gomez, and Jane Doe about not being afforded Halal food. Plaintiff had written notices which included inmate complaints to Defendant John Doe in his role as Food Manger and who was informed or had knowledge of claim of deprivation of Halal food and was informed as often a reasonably possible given Plaintiff confinement in Ad-Seg. Defendant Moua informally claimed in one incident to have presented Plaintiff's concerns to Defendant John Doe.

Defendant A. Rodriguez was aware of Plaintiff's claims of not being given Halal food. In communications with Moua and Ruiz, Defendant Rodriguez knew Plaintiff was not being provided Halal food. Defendant Rodriguez had communication with several corrections officers, two of which were Defendants Moua and Ruiz. Defendant Rodriguez was tasked with reviewing Plaintiff's claims of deprivation. Defendant Rodriguez took no reasonable steps to address the merits of the claims and remediation, which was within his authority to remedy the situation.

Defendant Moua was tasked with distributing food to prisoners including Plaintiff housed in Ad-Seg, Section H. Throughout a five-day work week, Defendant Moua "noticed Plaintiff's ongoing complaints" of not receiving Halal food. One day, Halal food would be on the food cart,

and the next day or two, there would be no religious diet food.  Defendant Moua had expressed his efforts at informing other officials such as Defendant Rodriguez and John Doe.  Defendant Moua took to documenting/responding to at least one inmate request for interview addressed to Moua, which shows that the many encounters with one formal response established Plaintiff did not receive a Halal food and Plaintiff was compelled to accept non-religious diet food.  (ECF No. 13, ¶ 18.)

Defendant L. Ruiz had knowledge of Plaintiff's religious dietary requirements and made little to no tangible efforts to resolve the deprivation on several occasions.  In communications with L. Ruiz, Ruiz always had baseless excuses as to why or who was to blame for no Halal food. In one confrontation, Ruiz said "I am not the food manager, 602 (appeal) the food manager." Defendant Ruiz was wearing a body camera recording the conversation and the non-Halal food that Plaintiff was being compelled to accept. Defendant Ruiz, like all the rest of the Defendants, cultivated a culture of indifference in administrative segregation.

Defendant Barraza was tasked with distributing food to Section G and H.  Plaintiff was housed in the last cell in the unit (#199).  Before the food was passed to Plaintiff, Plaintiff asked Defendant Barraza to open the tray lid, which is a normal request for Plaintiff. Once Plaintiff removed the tray lid, Plaintiff saw that the breakfast tray of food was not Halal food.  Defendant Barraza said that he would take the tray back and would locate a Halal food tray.  When he returned he said, "There is no other food trays (no Halal food) and that officials (custody supervisors and the correctional food manager) is aware of the issues."  There was no meaningful effort to locate or obtain Halal food tray by Defendant, and Plaintiff was compelled to accept non-Halal food.

Defendant Gomez at one point was tasked with distributing food to prisoners housed in Ad-Seg Section G and H.  Plaintiff was housed in the last cell #199.  Defendants Gomez and Jane Doe on the day in question collectively caused the deprivation as they were both working in concert.  As the Defendants approached Plaintiff's cell, Plaintiff was not able to complete the normal request of asking for the removal of the food tray lid. Defendants Gomez and Jane Doe had already taken the food tray lid off. As Defendant Gomez opened the food port, Defendant

Jane Doe's "fingers" were inside of the portion of the container as she handed the food tray to Defendant Gomez, who put his fingers in the inside portion slot of the food tray. Plaintiff objected to the conditions under which both officers were serving food in violation of the Sanitation Standards of the Department Operations Manual 54080.18 and .20 were not being followed. Defendant Gomez took notice as did Jane Doe. However, no efforts were made by either defendant to remedy Plaintiff's sanitation concerns and afford Plaintiff a Halal meal. There was "an engage of words of disrespect" by both Defendants. Plaintiff was entitled to Halal food and Plaintiff was not provided Halal food.

Plaintiff objected to the manager about the manner in which food trays were being handled. Defendant Gomez and Jane Doe walked away from Plaintiff's cell without issuing Plaintiff any Halal food. They had an obligation to afford Plaintiff with a Halal meal and failed to do so. No effort was made to address Plaintiff's concerns or issue Halal meal. Plaintiff was denied food for questioning the authority of the Defendants' method of issuing food.

Plaintiff contends he exhausted his administrative remedies as to all Defendants and video evidence will corroborate his claims.

As remedies, Plaintiff seeks declaratory relief, injunction, and compensatory and punitive damages.

**III.    Discussion**

    **A.    Supervisory Liability**

To the extent Plaintiff seeks to hold any defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. &*

1  *Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16

2  (9th Cir. 2012) (en banc).  "Under the latter theory, supervisory liability exists even without overt

3  personal participation in the offensive act if supervisory officials implement a policy so deficient

4  that the policy itself is a repudiation of constitutional rights and is the moving force of a

5  constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646

6  (9th Cir. 1989)) (internal quotation marks omitted).

### B. First Amendment

Incarcerated persons do not forfeit the right to the free exercise of religion, which is guaranteed by the First Amendment.  *See McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122-23 (9th Cir. 2013).  In the religious diet context, incarcerated persons "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea*, 833 F.2d at 198.

To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a prison official's actions: (a) "substantially burden[ed]" the inmate's exercise of a sincerely-held religious belief; and (b) did so in an unreasonable manner—i.e., the official's actions were not "rationally related to legitimate penological interests." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-50 (1987); *Jones v. Williams*, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015); *Shakur v. Schriro,* 514 F.3d 878, 884-85 (9th Cir. 2008).  A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs. *Jones*, 791 F.3d at 1031–32.  Plaintiff must demonstrate that prison officials prevented him from engaging in conduct which he sincerely believes is required by his faith.  *Shakur*, 514 F.3d at 884–85.  The underlying religious belief must be "sincerely held. " *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur*, 514 F.3d at 884–85 (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis); *see also Sprouse v. Ryan*, 346 F. Supp. 3d 1347 (D. Ariz. 2017) ("With respect to religious diets, prisoners 'have the right to be provided with food sufficient to sustain them in good health that

6

1  satisfies the dietary laws of their religion.'")

2  As to the denial of Halal food, Plaintiff alleges that he has a sincere religious belief that he
3  must consume Halal food.  Plaintiff also alleges that Plaintiff's religious exercise was
4  substantially burdened by the failure to provide the Halal food.  A reasonable inference from the
5  allegations is that Plaintiff had to eat non-Halal meals three days a week for nine months, which
6  was not compliant with the tenets of his Muslim faith.  Also, a reasonable inference from the
7  allegations is that denial of Halal food, for which Plaintiff was approved, was not reasonably
8  related to a legitimate penological interest.  Plaintiff alleges that he had been approved for Halal
9  food, but was not provided such meals three days of the week for nine months.  Thus, liberally
10 construing the allegations, Plaintiff has alleged that his sincerely held religious belief has been
11 substantially burdened, and it was not reasonably related to a penological interest.  The Court now
12 turns to which Defendants may be held responsible.

13 Plaintiff alleges that Defendants John Doe, A. Rodriguez, Moua, L. Ruiz, F. Barraza,
14 Gomez, and Jane Doe are each responsible for the failure to provide Halal food during Plaintiff's
15 nine month stay in Ad-Seg.  To state a claim against a defendant, plaintiff must plead facts
16 showing how this defendant was personally involved in violating plaintiff's rights, based on the
17 defendant's own duties and responsibilities.  *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.
18 1988).  Within the context of a § 1983 claim, a person subjects another to the deprivation of a
19 constitutional right if he does an affirmative act, participates in another's affirmative acts, or
20 omits to perform an act which he is legally required to do that causes the deprivation of which the
21 complaint is made.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  To state a claim under
22 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the
23 named defendants and the alleged deprivations.  *See Monell v. Dep't of Social Servs.*, 436 U.S.
24 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  Plaintiff must set forth specific facts as to each
25 individual defendant's causal role in the alleged constitutional deprivation.  *See Leer*, 844 F.2d at
26 634.

27 <u>Defendant John Doe, Food Manager</u>
28 For Defendant John Doe, Plaintiff alleges that John Doe is directly responsible for the

7

1   conditions and operations of food services at SATF.  One of John Doe's responsibilities is to

2   address or designate a subordinate to address and remedy issues or concerns presented to him via

3   informal or formal communications from inmates.  John Doe was informed of the deprivation of

4   Halal food and Plaintiff was told that Defendant Moua informed Defendant John Doe.  (ECF No.

5   13, ¶ 16.)  Liberally construing the allegations, Plaintiff alleges that Defendant John Doe had

6   personal responsibility for meal plans or had the authority to determine the terms of Plaintiff's

7   meal plan, knew Plaintiff was not receiving his Halal food and did not remedy the problem. *See*

8   *Starr v. Baca*, 652 F.3d at 1207 (government official acting in a supervisory capacity may be held

9   personally liable only if the official personally participated in or directed the violation or the

10  violation otherwise can be "directly attributed" to the supervisor's own wrongful conduct).

            Defendant A. Rodriguez

12          Defendant A. Rodriguez is also a supervisor and his personal actions in depriving Plaintiff

13  of food are not alleged in the complaint.  Rather, Plaintiff relies on Defendant A. Rodriguez's role

14  as a supervisor for denial of Plaintiff's Halal meals and his primary "responsibility [is] when

15  problems, issues or concerns relating to procedural regulations, constitutional mandates are

16  presented."  (ECF No. 13 p. 2.)  In addition, Plaintiff alleges that Defendant A. Rodriguez was

17  responsible for addressing the informal and formal communications from officers from the inmate

18  appeals process.  Plaintiff alleges that "Defendant Rodriguez in this context has failed."  Plaintiff

19  does not allege anything other than Defendant A. Rodriguez's supervisory liability.

20          Further, it appears Plaintiff alleges Defendant failed in addressing appeals.  A prison

21  official's processing of an inmate's appeals, without more, cannot serve as a basis for Section

22  1983 liability.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a

23  "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted),

24  cert. denied, 541 U.S. 1063 (2004); *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir.

25  2014) (district court properly dismissed Section 1983 claims against defendants who "were only

26  involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860).  Plaintiff fails to state a

27  cognizable First Amendment claim against A. Rodriguez.

28          Defendants Moua, Barraza, and L. Ruiz

8

Liberally construing the allegations, Plaintiff alleges that Defendants Moua, Barraza, and L. Ruiz routinely distribute the meals to him while in Ad-Seg and during their duties denied him Halal meals despite knowing he was a Halal meal recipient.  In the Court's liberal construction, Plaintiff states cognizable First Amendment claims against Defendants Moua, Barraza, and L. Ruiz.

Defendants Gomez and Jane Doe

Plaintiff fails to state a cognizable claim as to the sanitary condition of the food service when Gomez and Jane Doe put their fingers in the food tray slot.  Plaintiff alleges that food handling was "not sanitary," in one incident where Defendants Gomez and Jane Joe had put their fingers in the tray while serving Plaintiff.  Plaintiff does not allege that he has a sincerely held religious belief that food must be "sanitary."  Rather, Plaintiff cites to the Department's Operations Manual for how food is to be sanitarily served.  This incident fails to state a cognizable claim.  Plaintiff does not have a constitutional right to food service in any particular manner for a single incident.  *See e.g.*, *Rodriguez v. Bryson*, No. 5:17-CV-00010 MTT CHW, 2019 WL 13193452, at *15 (M.D. Ga. July 10, 2019), report and recommendation adopted as modified, No. 5:17-CV-10 (MTT), 2019 WL 13193451 (M.D. Ga. Sept. 6, 2019), aff'd sub nom. *Rodriguez v. Burnside*, 38 F.4th 1324 (11th Cir. 2022) (two isolated incidents constituted a mere inconvenience on religious exercise, as opposed to a substantial burden).

In a similar vein, Plaintiff fails to state a cognizable claim against Gomez and Jane Doe for the single incident where these Defendants did not serve Halal food.  Courts in the Ninth Circuit have routinely held that the denial of a religious practice on a single isolated occasion does not constitute a "substantial burden" and thus does not violate the First Amendment.  *See*, *e.g.*, *Howard v. Skolnik*, 372 F. App'x 781, 782 (9th Cir. 2010) (summary judgment on free exercise claim was appropriate where the plaintiff's allegation of two incidents where prison staff interfered with his fasting did not amount to a substantial burden); *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) ("relatively short-term and sporadic" interference with religious exercise was not a substantial burden); *Pouncil v. Sherman*, 2018 WL 646105, at *3 (E.D. Cal. Jan 31, 2018) (free exercise claim dismissed at screening because allegation of denial of meals for

1  a single night of Ramadan did not present a substantial burden); *Murie v. Crossroads Corr. Ctr.*,
2  2017 WL 2265145, at *3 (D. Mont. Feb. 24, 2017) (free exercise claim dismissed at screening
3  because allegation that the plaintiff was not allowed to attend a sweat lodge on a single occasion
4  did not present a substantial burden); *Stidhem v. Schwartz*, 2017 WL 6887139, at *4 (D. Or. Oct.
5  23, 2017) (summary judgment granted on the plaintiff's free exercise claim because a less-than-
6  one-day suspension of the plaintiff's kosher diet did not amount to a substantial burden).

### C.     RLUIPA

A prisoner's ability to freely exercise his religion is also protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest . . . and is the least restrictive means of furthering that . . . interest." 42 U.S.C.A. § 2000cc-1(a). "RLUIPA defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.' " *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013); 42 U.S.C. § 2000cc-5(7).

The First Amendment substantial burden requirement also applies to claims under RLUIPA. *See Greene v. Solano Cty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008). As with the First Amendment, under RLUIPA, the government imposes a "substantial burden" on a prisoner when it puts "substantial pressure on [him] to modify his behavior and to violate his beliefs." *Hartmann*, 707 F.3d at 1125 (citation omitted). RLUIPA is more protective than the First Amendment, in that the availability of alternative means of practicing religion is irrelevant to whether the Act has been violated. *See Holt v. Hobbs*, 135 S. Ct. at 862. With RLUIPA, the "'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.*

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, *Sossamon v. Texas*, 563 U.S. 277, 279 (2011), and RLUIPA does not

1 contemplate liability of government employees in their individual capacity. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their official capacities. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) ("RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and nothing in the statute suggests any congressional intent to hold them individually liable."). The proper defendant for a RLUIPA claim is the official who could appropriately respond to a court order on injunctive relief should one ever be issued. *See id.*

Plaintiff does not allege that any Defendant has the authority or power to designate or ensure that Plaintiff receives Halal food. Of the two supervisors, John Doe and Rodriguez, the allegations, liberally construed, infer that each Defendant could respond to a court order regarding Halal meals. For John Doe, Plaintiff alleges that he is directly responsible for the conditions and operations of food services at SATF. One of John Doe's responsibilities is to address or designate a subordinate to address and remedy issues or concerns presented to him via informal or formal communications from inmates. (ECF No. 13, ¶ 3.) For Defendant Rodriguez, Plaintiff alleges that as a supervisor correctional cook, his job is to address issues and concerns as presented to him.

None of the other defendants are alleged to have the authority to effectuate change should the Court order injunctive relief.

Liberally construing the allegations, Plaintiff states a cognizable RLUIPA claim for injunctive relief against those Defendants who can appropriately respond to the request, Defendants John Doe and A. Rodriguez. Specifically, as this relates to a RLUIPA claim, the proper defendant is the official who could appropriately respond to a court order on injunctive relief should one ever be issued. *Warzek v. Valley State Prison*, No. 1:20-CV-00027 ADA GSA PC, 2022 WL 4292362, at *28 (E.D. Cal. Sept. 16, 2022) (citing *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

**D.     Eleventh Amendment**

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an

unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). This jurisdictional bar includes "suits naming state agencies and departments as defendants," and it applies whether a plaintiff "seek[s] damages or injunctive relief." *Id.*; *Pennhurst State Sch.*, 465 U.S. at 102. As to state officials sued in their official capacity, the Eleventh Amendment immunizes state officials sued in their official capacity from claims for retrospective relief (including monetary damage claims) but does not immunize them from claims for prospective relief (such as forward-looking injunctive relief). *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ex Parte Young*, 209 U.S. 123 (1908).

Because California has not waived its Eleventh Amendment immunity under RLUIPA, suits against the state or its agencies are barred absolutely, regardless of the form of relief sought and officials sued in their official capacity are immune from suit for damages. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *Holley v. Cal. Dep't of Corr.,* 599 F.3d 1108, 1114 (9th Cir. 2010); *Young v. Biter*, No. 1:14-CV-01942-BAM, 2015 WL 3604158, at *5 (E.D. Cal. June 8, 2015). Plaintiff's RLUIPA and Section 1983 claims against defendants in their official capacity are similarly barred by the Eleventh Amendment and subject to dismissal to the extent Plaintiff seeks monetary damages. *See Sossamon*, 131 S. Ct. at 1663; *Graham*, 473 U.S. at 169–70.

**E.     Regulations and Prison Policies**

The complaint is unclear, but Plaintiff may be attempting to bring claims for violation of regulations or prison policies. However, Section 1983 only provides a cause of action for the deprivation of federally protected rights. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996)); *see Davis v. Kissinger*, No. CIV S-04-0878-GEB-DAD-P, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009). Nor is there any liability under § 1983 for violating prison policy. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). Thus, the violation of any state law or regulation that reaches beyond the rights

protected by the federal Constitution and/or the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under § 1983.

### F. State Law Claims

Despite being informed he must do so, Plaintiff has failed to alleged compliance with the Government Claims Act. *See State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1240, 1237, 13 Cal. Rptr. 3d 534, 90 P.3d 116 (2004) (for claims against the state, timely presentation of a claim under the Government Claims Act is an element of the cause of action and must be pled in the complaint).

### G. Doe Defendants

Plaintiff names several doe defendants. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

### H. Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### IV. Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's first amended complaint states

cognizable First Amendment claims against Defendants John Doe, Moua, Barraza, and L. Ruiz and a cognizable RLUIPA claim against Defendants John Doe and A. Rodriguez. However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other Defendants. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed on March 6, 2023, (ECF No. 13), on First Amendment claims against Defendants John Doe, Moua, Barraza, and L. Ruiz and a RLUIPA claim against Defendants John Doe and A. Rodriguez; and
2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

\* \* \*

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 29, 2023**        /s/ *Barbara A. McAuliffe*
                                            UNITED STATES MAGISTRATE JUDGE

14